IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1998 SESSION

FILED

October 13, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,     *     No. 03C01-9710-CC-00470

         Appellee,     *     RHEA COUNTY

vs.     *     Hon. J. Curtis Smith, Judge

JOEY D. BIDWELL,     *     (Motion to Withdraw
                                         Plea of Nolo Contendere)

         Appellant.     *

For Appellant:                      For Appellee:

Carol Ann Barron              John Knox Walkup
Attorney                        Attorney General & Reporter
264 Third Avenue
Dayton, TN 37321             Ellen H. Pollack
(at motion to withdraw        Assistant Attorney General
and on appeal)               425 Fifth Avenue North
                                      Nashville, TN 37243-0493

                                      Will Dunn
                                      Assistant District Attorney General
                                      First American Bank Building
                                      Third and Market Streets
                                      Dayton, TN 37321

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

The defendant, Joey D. Bidwell, appeals the trial court's denial of his motion to withdraw his pleas of nolo contendere to two counts of vehicular assault, a Class D felony. Tenn. Code Ann. § 39-13-106. The issue presented for review is whether the trial court should have permitted withdrawal of his pleas. We affirm the judgment of the trial court.

The defendant was indicted for the vehicular assault of Leslie Holdman and Larry Essex resulting from an auto accident in which the defendant, who had a blood alcohol level of .16, drove his vehicle into the rear of the victims' sport utility vehicle on Highway 68 in Rhea County. Ms. Holdman and Mr. Essex suffered serious physical injuries and emotional trauma as a result. Whether the victims' vehicle's brake lights were in proper working order and whether they had stopped illegally in the road would have been contested issues at trial.

At the plea submission hearing, the defendant waived his right to a formal reading of the indictment. The following colloquy occurred:

| | |
|---|---|
| Court: | Mr. Bidwell, you must understand the charge that you're pleading to. In order to do that [the prosecutor] is going to give some information to help you understand this charge. The first information he will give is the original charge and then he'll also tell me the charge you're pleading to if it's different. On the charge that you're pleading to he will state the elements of that offense.... Third, he'll give the minimum and maximum sentence for the charge that you're pleading to and fourth, he'll state his recommendations.... |
| State: | Your Honor, it's two counts of vehicular assault and he is entering a nolo contendere plea to those .... On vehicular assault the State would have to prove in each case that there was an individual that suffered serious bodily injury ... due to the |

2

> operation of ... an automobile by the Defendant and that the particular assault was a direct or []proximate result of the Defendant's intoxication and that [it] happened here in this county....
>
> Court: All right, the minimum and maximum sentences.
>
> State: Well, the minimum, it is a two to four year sentence as a Class D felony, and the fine is up to a $5,000.00 fine.
>
> Court: All right. The recommendation is.
>
> State: Your Honor, we're going to ask for a pre-sentence for the Court and have a sentencing hearing at some later date.
>
> Court: All right. Did you hear what was said, Mr. Bidwell?
>
> Defendant: Yes.
>
> Court: Any questions about what the State would have to prove to convict you of this offense?
>
> Defendant: No.
>
> Court: Any questions about the minimum or maximum penalties for the offense?
>
> Defendant: No.
>
> Court: Any questions about the recommendation?
>
> Defendant: (Shakes head from left to right.)

The trial court then instructed the defendant of the constitutional rights that he was relinquishing by entering a plea. The defendant had no questions and voluntarily gave up the right to jury trial, the right to confront witnesses, the right to remain silent, and the right to call witnesses and present evidence in his defense. After this litany of rights was explained, the following exchange occurred:

> Court: Do you have any questions about your constitutional rights or any questions at all, Mr. Bidwell?

3

Defendant: No.

Court: Do you voluntarily give up these constitutional rights to enter this plea?

Defendant: Yes.

Court: Mr. Bidwell, I have a written request to give up your jury trial right, and it's signed Joey Bidwell, did you sign this?[1]

Defendant: Yes.

Court: Did you either read it or talk with your attorney about it before you did?

Defendant: Yes.

Court: All right, if [the prosecutor will] summarize the facts ....

***

Court: Is there anything that [the prosecutor] said that you want to explain or question, Mr. Bidwell?

Defendant: No.

Court: Have you talked with your attorney about your case and any possible defenses that you might have?

Defendant: Yeah.

Court: Are you satisfied with the way that [your attorney] has represented you?

Defendant: Yes.

Court: Anybody promised you anything about your case other than what I've heard here today?

Defendant: No.

Court: Anybody forced you against your will to enter this plea?

Defendant: No.

Court: If I accept your plea ... you will have these

---

[1]This form bears the typed notation: "SENTENCING STAYED PENDING PRE-SENTENCE REPORT."

4

felony convictions on your record. ... I want you to understand that if you get into trouble in the future that these convictions can be used against you to cause you to receive greater punishment for future violations of the law, do you understand that?

Defendant: Yes.

Court: You're entering a nolo contendere plea, is that correct ...?

Defendant: Yes.

Court: Based on your plea and these facts, Mr. Bidwell, I find you guilty beyond a reasonable doubt of the two vehicular assault charges, a Class D felony. I believe you understand your constitutional rights and you've given those up voluntarily. We will order a pre-sentence investigation.

At the sentencing hearing, Ms. Holdman, a thirty-seven-year-old victim, testified that she could not recall the accident that caused her injuries except for being taken via helicopter to a hospital. She suffered back and head injuries that resulted in permanent damage. Ligaments were torn in her knees and jaw. Her sinuses collapsed and she could not smell or taste and underwent surgery. Additional surgeries are forecasted. Ms. Holdman has accumulated medical expenses in the amount of $60,000.00 and her marriage and family life has become strained. She asked the court to impose the maximum penalty.

Mr. Essex, a forty-eight-year-old victim, recalled that he was driving down the highway at about fifty miles per hour and saw headlights approaching quickly in his rear view mirror. The approaching car struck his vehicle, a 1989 GMC Jimmy, in the rear. The impact knocked him unconscious. He was taken by a Lifeforce helicopter to a nearby medical center. He suffered a "closed head" injury,

a blood clot, and had plates inserted around his eye. His jaws and right arm were broken. He has memory lapses and feels depressed. Since the accident, he has undergone four surgeries and, in the future, he will require extensive medical treatment. He testified that the accident and injuries had placed extreme pressure on his wife. His medical bills thus far totaled about $125,000.00 to $140,000.00. Mr. Essex also requested that the trial court impose the maximum sentence.

The pre-sentence report revealed that Ms. Holdman has a civil suit pending against the defendant demanding damages in the amount of $750,000.00. Mr. Essex also filed a civil suit against the defendant demanding compensatory damages of $1,200,000.00 and punitive damages in the amount of $2,400,000.00.[2]

The defendant was last arrested in 1995 on charges of leaving the scene of an accident involving the death of a person. He was a passenger in the vehicle and this charge was dismissed. In 1992, he was charged with driving under the influence and, pro se, entered a guilty plea for the reduced charge of reckless driving. He was sentenced to six months, suspended, and required to serve two weekends in jail. He was fined $400.00. In 1991, he was arrested and charged with public intoxication. He pled guilty to the charge and was sentenced to fifteen days, suspended, and fined $25.00. In 1990, he was cited for speeding and fined. The defendant has no prior felony convictions.

At the sentencing hearing, the defendant, a high-school graduate, testified that he has lived in Ten Mile and worked the second shift at La-Z-Boy for about ten years. He recalled that the night of the accident he was driving fifty-five or

---

[2]A plea of nolo contendere cannot be used against a defendant in a subsequent civil suit. Rule 11(e)(6), Tenn. R. Crim. P.

sixty miles per hour and came upon a vehicle stopped in the road. He saw no lights on the vehicle and, while he tried to avoid the vehicle, he could not. He admitted that he had been drinking at a bar immediately prior to the accident. His blood alcohol level was .16. He sustained a broken arm and cuts to his head. The defendant expressed remorse and maintained that the wreck was an accident. Since then, he claimed to have been saved and now is "right with the Lord." He asserted that he has not "touched a drop" of alcohol since August of 1996. The defendant maintained that he could keep his life together if the trial court awarded probation or community corrections. He stated he would do whatever the court required.

Keith Allen Kile, the defendant's pastor, attested to the conversion of the defendant. When asked whether he had ever seen the defendant drive to church, Reverend Kile acknowledged that he had but he was unaware that the defendant's drivers license had been revoked. Linda Hickman, a friend of the defendant's family, testified that the defendant had "straightened up his life ... he's a totally different person." She acknowledged that the defendant had "run with the wrong crowd" in the past but maintained that he no longer associated with his old friends. Ms. Hickman stated that she would help the defendant with his drinking problem if he were given probation.

Harold Bidwell, the defendant's father, allowed the defendant and his wife to live in a mobile home on his property. He testified that since the accident, the defendant had been saved and no longer drank alcohol. Mr. Bidwell runs a sawmill and the defendant helps him in the mornings before he goes to work at La-Z-Boy. Aware that the defendant did not have a driver's license, he conceded that he saw the defendant driving only one week prior to the sentencing hearing.

7

Joyce Bidwell, the defendant's mother, testified that she was aware of the defendant's drinking problem and did not approve. She stated that her son had experienced a religious conversion, had acted responsibly since then, attended church regularly, and no longer consumed alcohol. Charles Armour and Eddie Armour, first cousins to the defendant, also testified to the defendant's conversion and offered support.

David Shinn, a probation officer with the Department of Correction, testified that according to the records of the Department of Safety, the defendant's driver's license had been revoked. Mr. Shinn stated that he had contacted the defendant several weeks prior to the sentencing hearing and that the defendant claimed that his wife drove him to and from work.

The state recommended a three-year sentence with the Department of Correction. Defense counsel sought a suspended sentence. The trial court concluded that the defendant had a history of criminal convictions and criminal behavior and had continued to drive on a revoked license. Tenn. Code Ann. § 40-35-114(1). The trial court also concluded that personal injuries to the victims and property damages to their vehicle were particularly great and that the crime was committed under circumstances in which the potential for bodily injury was great. Tenn. Code Ann. § 40-35-14(6), (16). The trial court placed greatest weight on these latter two enhancement factors[3] and sentenced the defendant, who qualified as a Range I offender, to two concurrent four-year terms. He was ordered to serve one year in the county jail followed by ten years on supervised probation. As a condition of probation, the defendant was ordered to complete three hundred hours

_____

[3]The factors in Tenn. Code Ann. § 40-35-14(6) and (16) were improperly applied based upon the holding in State v. Williamson, 919 S.W.2d 69 (Tenn. Crim. App. 1995).

of public service work, attend AA meetings, and pay a total of $50,000.00 in restitution.

Afterward, the defendant retained new counsel and within thirty days filed a motion to withdraw his pleas. He cited as grounds that he had not been informed that he could not withdraw his pleas if the trial court rejected the state's recommended three-year sentence, that he entered the pleas because his attorney misadvised him about the sentence he would face had he gone to trial, and that his sentence was illegal.

At the hearing on the motion to withdraw, defense counsel asked the court to strike the third assignment of error regarding the imposition of an illegal sentence. The motion hearing proceeded on the two remaining grounds, that is, (a) that the defendant was not informed that he could not withdraw his pleas if the court rejected the state's recommended sentence, and (b) that the defendant entered his pleas because of the misadvice of his attorney.

The defendant testified that his former counsel had advised him that if he proceeded to trial, a sentence of twelve years could be imposed for each count of vehicular assault and that the trial court could order them to be served consecutively. He claimed his attorney advised him that nolo contendere pleas would result in "10 to 30 days in jail and I could do that on weekends. ... And that he could issue probation at the time." The defendant maintained he was never advised that the trial court could impose a sentence regardless of the recommendations of counsel. He stated that it was his understanding that the assistant district attorney had agreed to probation. He contended that he would have withdrawn his pleas after the sentencing hearing had the trial court given him an opportunity to do so,

9

claiming that he never would have entered the pleas had he known what his sentence would be.

During cross-examination, the defendant conceded that the main reason he wished to withdraw his pleas was because he expected a lower sentence and because he had complaints about his counsel. He acknowledged that he had understood what the trial judge had told him at the plea submission hearing, that he had told the truth, and that he was not under the influence of drugs or alcohol when entering his pleas.

Kim Bidwell, wife of the defendant, testified that his former counsel had warned that if he went to trial, he would "get the maximum ... and they'll run them separate ...." She claimed that the defendant's former counsel returned from a discussion with assistant district attorney and announced the state would ask for immediate probation in return for a plea of nolo contendere and that the defendant could expect, at worst, a few months of jail time.

Later, the assistant district attorney argued that there was no such agreement and he had been inclined to proceed to trial given the facts of the case and the seriousness of the injuries to the victims. He entered as an exhibit the defendant's criminal trial docket sheet which indicated as follows: "3-13-96[:] Deft. present w/ counsel - Waives Jury Trial - Enters Plea of Nolo Contendere to both counts of Vehicular Assault - Range I, Standard - Sentence stayed pending Pre-sentence Investigation. Sentencing 6-18-97."

The trial court ruled as follows:

It really boils down to an issue of credibility of the witnesses. ... [A]lcohol was involved ... we had two

10

victims horribly injured. Yes, [the defendant] testifies today that he thought he could plea for a few days in jail and a little community service work and that his attorney was telling him that that was the kind of plea that he could get. Even though, again, we have extremely serious injuries ... I just don't find it credible that [the defendant] was told, or could have believed, that nearly killing two people with the level of blood alcohol that he had in his body was going to be something that he could walk away from with basically a slap on the hand. I don't find that to be a credible position. I don't find his testimony in that regard to be credible.

I spent some amount of time in the plea ... going over with [the defendant] the nature of the charge .... There was never any announcement that anybody but the Court would sentence him after a pre-sentence investigation. There's nothing in any of the transcripts that indicates anything to the contrary. ... [T]he standard is manifest injustice ... I don't think [the defendant] has shown manifest injustice based on the testimony ....

(a)

The defendant maintains that he was not warned that the trial court could disregard the sentencing recommendation of the state and the defense and, thus, he should be permitted to withdraw his plea. See Rule 11, Tenn. R. Crim. P.

Rule 11, Tenn. R. Crim. P., governs the entry and withdrawal of pleas in Tennessee. It is substantially the same as the federal rule. See Commission Comment. Subsection (e), in particular, approves the common practice of plea negotiation and contemplates three types of plea agreements:

(1) In general. The district attorney general and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement, that upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the district attorney will do any of the following:
(A) move for dismissal of other charges; or
(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such

11

recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The Commission Comment explains that, while subsection (e)(1) lists three types of plea agreements, this list is not exclusive. In <u>Goosby v. State</u>, 917 S.W.2d 700 (Tenn. Crim. App. 1995), this court discussed the three types of plea agreements authorized by this rule:

> A plea agreement under Rule 11(e)(1)(A) anticipates a plea to certain charges in exchange for dismissal of other charges. An agreement under Rule 11(e)(1)(B) anticipates a recommended disposition by the state (or an agreement not to oppose a recommended disposition), but the recommendation does not bind the court. Under Rule 11(e)(1)(C), known as a "binding plea," the parties agree to a "specific sentence [as] the appropriate disposition of the case." Tenn. R. Crim. P. 11(e)(1)(c).
>
> A court retains discretion to accept or reject an (e)(1)(A) or (e)(1)(C) plea. In an (e)(1)(B) plea, the court is required to advise the defendant that the court is not bound by the prosecution's recommendation. If the court rejects the terms of an (e)(1)(B) agreement, <u>the trial judge must advise the defendant personally in open court that since the court is not bound by the agreement, defendant's persistence in the plea may result in a disposition less favorable than that contemplated by the agreement</u>. Tenn. R. Crim. P. 11(e)(2). Once an (e)(1)(B) guilty plea is accepted by the court, the defendant may not withdraw the plea. Tenn. R. Crim. P. 11(e)(2). If, however, the court rejects the terms of a "binding plea" pursuant to (e)(1)(A) or (C), then the defendant may withdraw the guilty plea since the plea is conditioned upon a specific result. Tenn. R. Crim. P. 11(e)(2).

<u>Id.</u> at 706 (emphasis added).

The plea agreement in this case was not enumerated by the rule. The defendant pled to the indictment; that is, there was neither a reduction of the charges nor a dismissal of any charge, thus this was not an (e)(1)(A) agreement. Nor was there an agreed-upon sentence at the time the plea was entered; therefore, this was not a classic (e)(1)(C) agreement. Lastly, an (e)(1)(B) agreement would

12

require a recommended sentence by the state or a declaration by the state that it would not take a position against the defendant's requested sentence. That was not done in this case. The district attorney simply requested a pre-sentence report and sentencing hearing. At the motion to withdraw, the trial court found as a fact that there was no sentencing agreement between the prosecutor and the defendant. Thus, this plea was an open plea, involving no recommendation by the state other than a pre-sentence investigation, through which a defendant is sentenced according to the Criminal Sentencing Reform Act of 1989. In our view, the trial court is not required to inform the defendant under these circumstances that the plea cannot later be withdrawn.

The withdrawal of a plea is governed by Tenn. R. Crim. P. 32(f). See State v. Bilbrey, 816 S.W.2d 71, 75-76 (Tenn. Crim. App. 1991). When the motion is filed after the imposition of sentence, as in this case, the standard to be applied is whether there is "manifest injustice." Tenn. R. Crim. P. 32(f); see also State v. Davis, 823 S.W.2d 217, 219-20 (Tenn. Crim. App. 1991). While the principle of manifest injustice encompasses constitutional violations, it also may include situations where there was a clear injustice without a constitutional deprivation. State v. Antonio Demonte Lyons, No. 01C01-9508-CR-00263, slip op. at 16 (Tenn. Crim. App., at Nashville, Aug. 15, 1997). Whether there has been manifest injustice is determined by the courts on a case by case basis. State v. Turner, 919 S.W.2d at 355. In Turner, this court observed as follows:

> A trial court may permit the withdrawal of a plea of guilty to prevent "manifest injustice" when it is established that the plea was entered due to (a) "coercion, fraud, duress or mistake," (b) "fear," (c) a "gross misrepresentation" made by the district attorney general, or an assistant, (d) the district attorney general, or an assistant, withholds material, exculpatory evidence, which influences the entry of the plea, or the plea of guilty was not voluntarily, understandingly, or knowingly entered. Conversely, the trial court will not, as a general

13

> rule, permit the withdrawal of a plea of guilty to prevent "manifest injustice" when the basis of the relief is predicated upon (a) an accused's "change of heart," (b) the entry of the plea to avoid harsher punishment, or (c) an accused's dissatisfaction with the harsh punishment imposed by the trial court or a jury.

Id. at 355 (footnotes omitted). Whether to grant a motion to withdraw a plea rests within the sound discretion of the trial court. State v. Haynes, 696 S.W.2d 26, 29 (Tenn. Crim. App. 1985). The burden of proof is on the defendant. Davis, 823 S.W.2d at 220.

The trial court concluded that the defendant had failed to demonstrate manifest injustice. In our view, the record supports this conclusion. The defendant testified that the main reason he wanted to withdraw his pleas was because he was unhappy with his sentence. Under the rationale of Turner, this would not qualify as a basis for relief. Turner, 919 S.W.2d at 355. We find no abuse of discretion on the part of the trial court.

(b)

The defendant also maintains that his pleas were not knowing or voluntary because his attorney misadvised him as to the length of the sentence he could receive for the offenses in the event he proceeded to trial. In order for the petitioner to be granted relief on grounds of ineffective counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984). This two-part standard, as it applies to guilty pleas, is met when the petitioner establishes that, but for his counsel's errors, he would not have pled guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

14

The defendant and his wife testified that former counsel had advised them that the defendant could face consecutive twelve-year sentences, for an effective sentence of twenty-four years. The state did not subpoena the prior attorney and presented no proof on this issue, relying instead on the defendant's burden to show manifest injustice. The defendant's testimony at the motion to withdraw was, however, contradicted by the record of the guilty pleas. At the plea submission hearing, the state represented in open court that the possible sentence was between two and four years. The defendant informed the trial court that he understood the range of sentence that could be imposed. He had no questions. At the motion to withdraw, the defendant testified that his prior statements were truthful. The trial court concluded that the defendant's testimony at the motion to withdraw was not credible. The trial judge saw the demeanor of the witnesses and heard their testimony firsthand. Under those circumstances, we are hesitant to substitute our inferences or to reassess the credibility of the defendant and that of his wife.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:

_____
Joseph M. Tipton, Judge

_____
David H. Welles, Judge

15